UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS R. MILLER, | ) | Case No.: 5:16CV1817 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE CHRISTOPHER BOYKO |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Thomas R. Miller (hereinafter, "Miller" or "claimant") challenges the final decision of Defendant Commissioner of Social Security (hereinafter, "Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") and a Period of Disability (collectively, "Disability benefits") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

I. PROCEDURAL HISTORY

On August 1, 2013, Miller applied for Disability benefits. (R. 10, PageID #: 148, 255, 271.) Miller stated that he became unable to work because of his disabling condition on October 1, 2011. (*Id.* at 272, 255, 148.) Miller listed his physical or mental conditions that limit his ability

to work as: "Right wrist injury, torn in 2 places." (*Id.* at 272.) His application was denied initially and upon reconsideration. (*Id.* at 178-190, 191-203.) Thereafter, he filed a written request for a hearing before an administrative law judge. (*Id.* at 144.)

An Administrative Law Judge ("the ALJ") convened a hearing on June 17, 2015, to hear Miller's case. (R. 10, PageID #: 159-177.) Miller appeared at the hearing, was represented by counsel, and testified. (*Id.* at 161.) A vocational expert ("VE") attended the hearing and provided limited testimony. (*Id.* at 161, 173-174.) After the hearing, the ALJ issued interrogatories to a medical expert, and to the VE. (*Id.* at 404-414, 220.)

On August 5, 2015, the ALJ issued his decision, applying the standard five-step sequential analysis to determine whether Miller was disabled. (R. 10, PageID #: 145-154; *see generally* 20 C.F.R. § 404.1520(a).) Based on his review, the ALJ concluded Miller was not disabled. (*Id.* at 148, 153.) The Appeals Council denied Miller's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 53-56.)

Miller now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case. Miller briefs the following issue for review:

> The Administrative Law Judge's conclusion lacked the support of substantial evidence in finding that plaintiff would retain the residual functional capacity to perform a full range of medium work.

(R. 11, PageID #: 424.)

2

## II. PERSONAL BACKGROUND INFORMATION

Miller was born on February 28, 1963, and was 48 years old on his alleged disability onset date. (R. 10, PageID #: 153, 255, 269.) Accordingly, Miller was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. § 404.1563(c). Miller completed twelfth grade, and is able to communicate in English. (R. 10, PageID #: 273, 271.) He has past relevant work as a welder/fitter and a welding machine tender. (*Id.* at 152, 172.)

## III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Miller's brief alleging errors by the ALJ. Miller applied for Disability benefits on August 1, 2013. (R. 10, PageID #: 148, 255, 271.) Miller listed his physical or mental conditions that limit his ability to work as: "Right wrist injury, torn in 2 places." (*Id.* at 272.)

### A. Treatment Records

The ALJ determined that the claimant has the following severe impairment: right wrist injury. (R. 10, PageID #: 150.) Miller injured himself lifting a heavy casting in February 2009, at which time he felt a sudden, painful "pop" in his right wrist. Although he continued working for a time, he noted weakness and pain with repetitive motion, and with twisting. (*Id.* at 401, 346.) Miller stated that he became unable to work because of his disabling condition on October 1, 2011. (*Id.* at 272, 255, 148.)

---

[1] The following recitation of evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties *and* also those deemed relevant by the court to the assignments of error raised.

X-rays from April 19, 2011, indicated slight positive ulnar variance, otherwise these were unremarkable, according to Hill Hastings, II, M.D., and James D. Gilbert, M.D. (R. 10, PageID #: 401, 346.) An MRI report from May 18, 2011, showed a central tear of the triangular fibrocartilage complex, and a suspected tear of his LT ligament. (*Id.* at 401, 339.)

At a January 17, 2012, visit with Dr. Hastings, a hand and shoulder specialist, the doctor recommended diagnostic and therapeutic wrist arthroscopy. The doctor stated the surgery was "likely to improve his day-to-day activities," although it was unclear whether it would enable him to return to repetitive motions with his wrist. At that point, Dr. Hastings released Miller to work with up to 20 pounds lifting, but no repetitive grasping or twisting. (*Id.* at 402.)

Miller next sought treatment on April 8, 2013, with James W. Gesler, M.D., of Wooster Orthopaedics and Sports Medicine. (R. 10, PageID #: 398-399; R. 11, PageID #: 420.) At that visit, claimant reported discomfort in his wrist, and the doctor noted diminished grip strength. Dr. Gesler recommended a functional capacity evaluation ["FCE"] "to see what his capabilities are for his right wrist to determine what potential jobs he might be able to do." (*Id.* at 398.) After the FCE, Dr. Gesler said claimant would need to see Dr. Suszter, a hand surgeon. (*Id.* at 399.)

The claimant next returned to Wooster Orthopaedics for a follow-up visit a year and a half later, on November 21, 2014. (R. 10, PageID #: 395-396; R. 11, PageID #: 422.) Dr. Gesler reported Miller "has not had any treatment or seen any physician since he was last seen by me." Dr. Gesler also noted that claimant did not follow through with his recommendations to see a hand surgeon or get a functional capacity evaluation. The doctor found stiffness and weakness in the right wrist, with hand weakness and diminished grip strength. Dr. Gesler again encouraged

Miller to get an FCE and to visit Dr. Suszter, the hand surgeon, "to see if any intervention at this point could significantly improve his level of function." (R. 10, PageID #: 395.)

Miller then visited Michael P. Suszter, D.O., on December 5, 2014, for evaluation of his right wrist pain. (R. 10, PageID #: 391-393.) Dr. Suszter noted complaints of wrist pain, which increases with repetitive motions, decreased grip strength, and some numbness in two of his fingers. (*Id.* at 391-392.)

After discussion with Dr. Suszter, Miller indicated his desire to proceed with an evaluation "to see if there are interventions that make this better" as he would like to return to his previous work. The doctor stated that he wanted to repeat an MRI of the right wrist, and obtain a new right arm EMG and nerve conduction study for evaluation "as all his prior studies are old and outdated." The plan was for Miller to return after the studies were done for an evaluation and a further treatment plan, "which may include steroid injections, surgical intervention, or if no surgery is indicated," the claimant would proceed with an FCE. (R. 10, PageID #: 393.)

The ALJ notes: "However, there are no updated diagnostic studies in the file." (R. 10, PageID #: 152.) The claimant does not provide any further studies either. *See generally* R. 11, PageID #: 422-423.

## B. Medical Opinions

The claimant appeared for a consultative physical exam before Steven Rodgers, M.D., on December 2, 2013. (R. 10, PageID #: 383-385.) Dr. Rodgers noted decreased motor strength, and decreased range of motion, in the right wrist, as well as decreased grip strength of the right hand. The doctor assessed limited use of the right hand in work-related activities, with difficulty with

repetitive gripping and torqueing type maneuvers. Lifting to be limited to 40 pounds occasionally, and 20 pounds frequently. (*Id.* at 384.)

On December 11, 2013, state reviewing physician Anne Prosperi, D.O., opined that claimant should be limited to occasionally lifting or carrying 20 pounds, and frequently, 10 pounds. She limited claimant to occasional right hand controls. (R. 10, PageID #: 185.) Dr. Prosperi also limited claimant to occasionally handling with the right hand, and frequent fingering with that hand. (*Id.* at 186.) Also, the doctor limited Miller's use of "vibratory tools" with right hand to no more than occasional. (*Id.* at 187.) Upon reconsideration on February 8, 2014, Ermias Seleshi, M.D., concurred with Dr. Prosperi's limitations. (*Id.* at 196-199.)

After the June 2015 hearing, the ALJ issued interrogatories to a medical expert. (R. 10, PageID #: 404-414.) John M. Sassano, D.O., reviewed the record on June 20, 2015, and provided a medical sources statement. Dr. Sassano opined that Miller could frequently lift up to 20 pounds, and occasionally lift as much as 50 pounds. The doctor opined that Miller could frequently carry up to 50 pounds, and occasionally carry as much as 100 pounds. (*Id.* at 404.) Dr. Sassano indicated that claimant could reach, finger, and feel continuously with his right hand, frequently handle with that hand, and only occasionally push or pull with his right hand. There were no restrictions on the left hand. (*Id.* at 406.)

Dr. Sassano indicated that no treatment had been provided for claimant's right wrist injury ("no therapy, no meds, no surgery"). (R. 10, PageID #: 411.) The doctor opined that none of claimant's impairment met or equaled a Listing. (*Id.* at 412.) Dr. Sassano noted that the medical records all stated claimant would have trouble with heavy lifting and vigorous pounding to the right wrist, "but claimant appears to be able to do fine and gross movements effectively.

He has no difficulties with activities of daily living." Dr. Sassano indicated "there appears to be no attempt to initiate any form of treatment to help assist the claimant to improve." (*Id.* at 413.)

### IV. TESTIMONY OF VOCATIONAL EXPERT

At the hearing, the VE provided limited testimony. (R. 10, PageID #: 173-174.) The ALJ determined that Miller had past relevant work as a welder/fitter, highly skilled work with medium physical demands, and some unskilled work as a welding machine tender, also medium physical demands. (*Id.* at 172.) The VE affirmed that both of those jobs "involved hands on, both hands having to grasp, manipulate." (*Id.* at 174.)

Following the hearing, the ALJ issued a Vocational Interrogatory form with multiple interrogatories to the VE. (R. 10, PageID #: 320.) The VE's response was dated July 7, 2015. (*Id.* at 321-324.) After a review of the evidence provided to him, the VE responded that Miller had the following work experience in the past fifteen years:  Welder/fitter, DOT 819.361-010, skilled level 7, medium; Welder combination, DOT 819.381-010, skilled 6, medium; Grinding machine operator, DOT 603.685-062, semi-skilled 3, medium; Production machine tender, DOT 609.685-018, semi-skilled 3, medium; and, Welder/assembler, DOT 819.381-010, skilled 6, medium. (*Id.* at 321.)

The Vocational Interrogatory number seven asked the VE to assume a hypothetical individual of claimant's age, education, and work experience, with a residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). Interrogatory eight asked, could such an individual perform any of claimant's past

7

jobs as actually performed. The VE's response was, yes, and further indicated all of claimant's past work had been performed at the medium level. (R. 10, PageID #: 321.)

In addition, the ALJ inquired whether the hypothetical individual could perform any unskilled occupations that exist in the national economy. The VE responded that there were such jobs, naming (1) Cleaner II, DOT 919.687-014, SVP 1, with 300,000 jobs in the national economy; (2) Kitchen helper, 318.687-010, SVP 2, with 500,000 jobs in the national economy; and, (3) Hand packager, DOT 920.587-018, SVP 2, with 200,000 jobs in the national economy. (R. 10, PageID #: 322.)

## V.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his August 5, 2015, decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since October 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: right wrist injury (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).

6. The claimant is capable of performing past relevant work as a welder/fitter, DOT 819.361-010, medium, skilled, SVP 7 and welding machine tender, DOT

819.685-010, medium, unskilled, SVP 2. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2011, through the date of this decision (20 CFR 404.1520(f)).

(R. 10, PageID #: 150-153.)

## VI. DISABILITY STANDARD

A claimant is entitled to receive Disability benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age,

9

education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VII. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may

examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VIII.  ANALYSIS

Miller briefs the following issue for review:

> The Administrative Law Judge's conclusion lacked the support of substantial evidence in finding that plaintiff would retain the residual functional capacity to perform a full range of medium work.

(R. 11, PageID #: 424.)

Miller asserts that his claim of disability is based on a right-wrist injury that caused him pain, numbness, and limited use of his right (dominant) hand. He contends that all doctors who examined him found him to have limited use of his right hand because of the injury, and that initial work-related restrictions included lifting less than twenty pounds, or no repetitive use of the hand. (R. 11, PageID #: 425.) Miller argues that the disability examiner's evaluation found he would have "limited use of the right hand," and difficulty with repetitive gripping and torque-type maneuvers. (*Id.* at 426, citing R. 10, PageID #: 384.) He also states that the reviewing physicians found evidence supported an RFC for light exertional work, with limits on the use of the right hand. (*Id.* at 426, citing R. 10, PageID #: 185-187, 197-199.) The VE testified, as Miller relies upon, that all of his past work was performed at the medium level, and required use of both hands for grasping and manipulating. (*Id.* at 426, citing R. 10, PageID #: 174.)

Miller challenges the ALJ's decision, which he states erroneously found claimant capable of the full range of medium work, with no limitations on the use of his right hand. (R. 11,

11

PageID #: 426, citing R. 10, PageID #: 151.) The claimant contends that the ALJ's finding improperly relied on claimant's lack of treatment. He further alleges that the ALJ's determination that he was capable of the full range of medium work "stands alone in the record and is unsupported by any other medical opinion or examination findings." (R. 11, PageID #: 426-427.)

It is the claimant's burden to prove that he is disabled within the meaning of the Act, and to establish that his impairments render him unable to engage in any substantial gainful activity. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a). Ultimately, the claimant bears the burden of proving his entitlement to benefits. *Boyes v. Secretary, HHS*, 46 F.3d 510, 512 (6th Cir. 1994).

Social Security regulations address the issue of what treatment a claimant must follow. The pertinent regulations provide:

> (a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work.
>
> (b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R. § 404.1530. *See, e.g.*, *Johnson v. Secretary, HHS*, 794 F.2d 1106, 1111 (6th Cir. 1986); *Hudgines v. Colvin*, No. 1:13CV2411, 2015 WL 410697, at *12 (N.D. Ohio Jan. 29, 2015); *Smith-Marker v. Astrue*, 839 F. Supp. 2d 974, 984 (S.D. Ohio 2012) (to obtain benefits, claimant must follow prescribed treatment, or have good reasons for failing to do so).

The Sixth Circuit has determined that a claimant's failure to seek continued treatment is a factor that an ALJ may properly consider in determining the claimant is not disabled. *Ball v. Secretary, HHS*, 931 F.2d 893, 1991 WL 66051, at *4 (6th Cir. 1991) (per curiam) (TABLE, text in WESTLAW) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir.1986)). In addition, an ALJ may discount a physician's opinion where there are "substantial gaps" in the doctor's treatment of the claimant. *Tate v. Commissioner*, No. 10-4387, 2012 WL 762884, at *2 (6th Cir. Mar. 9, 2012).

The ALJ's opinion gave "some weight" to Dr. Sassano's opinion, and "limited weight" to most of the other medical opinions, on the basis that their "restrictions are unsupported, as the claimant has had no real treatment in over three years." The ALJ's opinion addressed the issue more fully as follows:

> The claimant has not had a diagnostic and therapeutic arthroscopy, as recommended by the orthopedic surgeon. Further, the diagnostic studies are over 4 years old, and he has not had updated studies performed, as recommended by the hand surgeon. The records reflect no treatment, including physical therapy or injections, since the alleged onset date. He does not even take prescribed pain medications.
>
> In sum, the above residual functional capacity assessment is supported by the medical evidence of record, medical source opinions, and the claimant's activities of daily living. The claimant has had no real treatment since the onset date. He was advised to have a diagnostic arthroscopy in January 2012. The records reflect no follow up until April 2013, at which time he was to see a hand surgeon. He did not return for treatment until late 2014, at which time he was to have updated MRI and EMG/nerve conduction studies done. He has not done had [*sic*] this testing done. The sporadic treatment, with gaps of a year and a half between follow up, as well as the lack of follow through with treatment recommendations, demonstrate the claimant's symptoms are not as severe as alleged.

(R. 10, PageID #: 152.)

13

Miller appears to contend that his lack of follow through was justified. Miller asserts that "surgery was not recommended because it was not expected to return him to his job." (R. 11, PageID #: 425, citing R. 10, PageID #: 336, 350, 376.) The evidence in the record cited by claimant, however, does not support his assertion that his physicians did not recommend surgery because it would not have permitted him to return to work. Rather, the doctors recommended that he explore surgery or other treatment options.

On January 15, 2011, Dr. Gilbert recited that "Dr. Elluru backed off on recommending any surgery," without specifying the reason. Nonetheless, Dr. Gilbert recommended that Miller visit Dr. Hastings, a hand and shoulder specialist. (R. 10, PageID #: 336.) Dr. Hastings, on January 17, 2012, recommended diagnostic and therapeutic wrist arthroscopy. The doctor stated the surgery was "likely to improve his day-to-day activities," although it was unclear whether it would enable him to return to repetitive motions with his wrist.[2] (*Id.* at 350, 402 (duplicate).) On April 8, 2013, Dr. Gesler recommended a functional capacity evaluation "to see what his capabilities are for his right wrist to determine what potential jobs he might be able to do." (*Id.* at 376, 398 (duplicate).) Dr. Gesler also recommended that Miller see Dr. Suszter, a hand surgeon. (*Id.* at 377, 399 (duplicate).) None of these doctors stated that surgery was not recommended because it might be futile, insofar as a return to work was concerned. Rather, the doctors recommended treatment, such as a functional capacity evaluation and surgical intervention to assess his condition and enhance functionality. Miller did not pursue these recommendations.

---

[2] At that point (pre-surgery), Dr. Hastings did state Miller was markedly weak and symptomatic, such that he could not envision claimant being capable of working without restrictions in his present condition. (R. 10, PageID #: 350, 402 (duplicate).)

It was proper for the ALJ to consider Miller's failure to seek treatment as a factor in determining that the claimant was not disabled. *Ball*, 1991 WL 66051, at *4; *Johnson*, 794 F.2d at 1111; *Hudgines*, 2015 WL 410697, at *12; *Square v. Commissioner*, No. 1:13 CV 541, 2014 WL 1237792, at *8 (N.D. Ohio Mar. 25, 2014) (citing 20 C.F.R. § 404.1530); *Smith-Marke*, 839 F. Supp. 2d at 984. Miller has not demonstrated good cause for his failure to pursue treatment. *See generally* 20 C.F.R. § 404.1530(b).

In addition, it was proper for the ALJ to discount physician opinions when there were substantial gaps in the treatment of the claimant, or where the opinion was based on outdated medical information. *See, e.g.*, *Tate*, 2012 WL 762884, at *2; *Biestek v. Commissioner*, No. 16-CV-10422, 2017 WL 1214456, at *6 (E.D. Mich. Feb. 24, 2017).

The ALJ's decision, however, was not based solely on the claimant's failure to pursue recommended treatments. Rather, the ALJ stated that his RFC assessment was also supported by the medical evidence of record, medical source opinions, and the claimant's activities of daily living. (R. 10, PageID #: 152.) The Commissioner points out, for example, that Miller's most recent exam with Dr. Suszter in December 2014 found normal strength and muscle tone in the right wrist (although grip was still diminished). (R. 13, PageID #: 443, citing R. 10, PageID #: 392-393.)

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence. The record evidence, as discussed in the ALJ's decision, is such that "a reasonable mind might accept [it] as adequate" support for the Commissioner's final benefits determination. *See Kirk*, 667 F.2d at 535 (quoting *Richardson*, 402 U.S. at 401).

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

Date:   May 31, 2017

**OBJECTIONS**

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).